(86 Misc. Rep. 116)

LEVIN v. MAYER et al.

(Supreme Court, Special Term, New York County. June, 1914.)

1. CORPORATIONS (§ 55*)—BY-LAWS—VALIDITY.
   A by-law of a private corporation, requiring the unanimous vote of its directorate to a sale of its business or property otherwise than in the usual course of business, is not violative of General Corporation Law (Consol. Laws, c. 23) § 34, providing that "unless otherwise provided" the action of a majority of a board of directors at a lawful meeting shall be the act of the board.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 152; Dec. Dig. § 55.*]

2. CORPORATIONS (§ 605*)—DISCONTINUANCE OF BUSINESS.
   Where a private corporation is unable to do business except at a loss, it has the right to cease doing business.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2389; Dec. Dig. § 605.*]

3. CORPORATIONS (§ 320*)—STOCKHOLDER'S ACTION—EVIDENCE—DISMISSAL.
   Where, in a stockholder's action against a corporation and two individuals who owned a majority of the stock and were a majority of the directors, for an accounting for corporate assets acquired by the individual defendants and for damages occasioned by their misconduct, the evidence, though showing that such defendants had exceeded their powers, fails to show that plaintiff has been injured thereby, the complaint will be dismissed on the merits.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

Action by Annie Levin against Joseph L. B. Mayer and others. Complaint dismissed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Engel Bros., of New York City (Jacob B. Engel, of New York City, of counsel), for plaintiff.

Jellenik & Stern, of New York City (Nathan D. Stern, of New York City, of counsel), for defendants.

PENDLETON, J.    The action is a stockholder's suit against the defendant company and two of its three directors, in which plaintiff seeks a judgment against the individual defendants for an accounting for all property of the company diverted by them, and for injuries sustained by the company by reason of the alleged unlawful acts of said individual defendants. The complaint alleges that the two individual defendants, being a majority of the directors of the company and owners of a large majority of its stock, in violation of the by-laws of the company, and for their own benefit, caused the company to discontinue business and sell out its assets, and that the said defendants so manipulated the affairs of the company that its assets have been acquired by and gone into the possession of said defendants and been appropriated by them, thereby injuring the said company and the plaintiff as a stockholder thereof, and prays as relief that said defendants account for the assets of the company diverted by them and for damages to the company occasioned by their misconduct. It appears by the evidence at the trial that the defendant company was organized by plaintiff and the individual defendants to take over and carry on a certain business theretofore owned by plaintiff, plaintiff receiving certain stock for the assignment of the business and its assets to the company and the individual defendants receiving stock for money paid into the company by them. It was agreed that the directors of the company were to consist of the two individual defendants and one Louis Bobrick, plaintiff's son-in-law, and evidently intended to represent her on the board, and a by-law was adopted providing that the unanimous vote of all three directors should be required to sell out the business as a going concern, or to sell out any of the machinery and stock on hand, in bulk or in any other way than the usual course of business. The company was organized and continued to carry on business in the usual course until about November, 1910, when, it appearing that the company had been losing money and was largely indebted, the individual defendants, without the consent of the third director and without a vote of all the directors, as required by the by-law in question, stopped the business of the company and sold out part of its machinery and stock on hand, in bulk or not, in the usual course of business, and finally disposed of all the assets of the company, applying the proceeds to the payment of its debts, with the result that all the assets have been disposed of and all debts paid with the exception of about $1,500 due to the father of one of the individual defendants. It does not appear that any of its assets were illegally acquired by, or diverted to, the individual defendants, or that they were sold for less than their fair value at a sale of that character, or that the individual defendants acted in bad faith, or were actuated by any other motive than to do what, in their judgment, was the best course, to realize as much as possible for the creditors and stockholders of

149 N.Y.S.—8

the defendant company; and, as the individual defendants owned all the· stock except that owned by plaintiff and the one share held by Bobrick, their actions have been ratified by a majority of the stock.

[1] It is urged on behalf of defendants that the above referred to by-law is in violation of the Corporation Law of this state, and therefore void. The section relied on is section 34 of article 2, which provides substantially that *unless otherwise provided* the action of the majority of a board of directors at a lawful meeting shall be the act of the board of directors. As the statutory provision expressly excepted cases *otherwise provided* for, it was evidently intended to permit different regulations, and the by-law in question manifestly comes within the exception and in no sense violates the statutory provision. By-laws may control the actions of directors. Article 2, § 11, subd. 5.

[2] The general rule applicable to a corporation ceasing to do business and selling out its assets is well settled. In the case of private corporations exercising no public or quasi public functions, the right of the company to discontinue its operations when they have become unprofitable for the purpose of protecting its shareholders from loss is undoubted. Jameson v. Hartford Fire Ins. Co., 14 App. Div. 388, 44 N. Y. Supp. 15; Mayo v. Knowlton, 134 N. Y. 250, 31 N. E. 985. In Raymond v. Security Trust & Life Ins. Co., 111 App. Div. 191, 97 N. Y. Supp. 557, the court, commenting on the previous case of Jameson v. Hartford Fire Ins. Co., 14 App. Div. 380, 44 N. Y. Supp. 15, lays down the general rule as follows:

"In that case the rule that a hopelessly insolvent corporation must wind up its affairs in the manner prescribed by law, and the other rule that a corporation doing a profitable and paying business owes some duty to the public to continue to exercise the functions conferred upon it, are both recognized; but another rule is declared to exist, not in conflict with either of the others, and that is, that where a corporation is not insolvent, but is doing a losing business and unable to continue without further loss, it has the right to sell out its business to another corporation and to cease operations, and a contract to that effect, made in good faith,  *  *  *  is valid and binding."

In a recent case, very similar to the one at bar, it was held, in a stockholder's suit against directors for selling out the assets and using the proceeds to pay the company's debts, that in the absence of· fraud or bad faith no action would lie. Weingreen v. Michelbacher, 149 N. Y. Supp. 110. That a private corporation, when unable to do business except at a loss, has the right to cease doing business is therefore plain.

[3] How far the directors are authorized, in the absence of authority from or ratification by the stockholders, to cease operations and sell out its assets, it is unnecessary to now decide, as here the by-law expressly provided they should not have the right so to do except by the unanimous vote of all its directors at a meeting of the board, and here that was not had. That these defendants' actions, in the absence of such vote, were in excess of their lawful powers may be conceded. It does not follow, however, that they were bound to continue a losing business. Plaintiff's contention is that they should have resorted to the statutory proceeding for the dissolution of the company. Assuming this to be so, it is manifest a sale of assets under such proceedings would not have been in the usual course of business, but would have been a winding up

sale, and there is nothing to show that any greater prices would have been thereby realized. In fact, common experience would indicate that with the expenses incident to such proceeding the result would have been less beneficial. While, therefore, defendants may have exceeded their powers, there is no evidence that plaintiff has in any way suffered thereby. If fraud or bad faith on the part of the defendant had been shown, an entirely different question would have been presented. In such case defendants might well be held to account for the loss entailed in closing up the business and selling the assets in the manner pursued, but where the only cause of complaint is that they sold the property direct instead of through a receiver or other similar method in dissolution proceedings, the case is very different. In the absence of fraud or bad faith, or evidence that the assets were sacrificed or sold for less than their value at sales of that character, or that any of the property or proceeds thereof have come into defendants' possession, plaintiff has failed to prove facts sufficient to warrant the interference of a court of equity. In the recent case of Clubb v. Cook, 147 N. Y. Supp. 94, it was held that a failure by directors to perform a duty, in the absence of bad faith and where no injury resulted, was not sufficient to support a stockholder's action. The complaint must be dismissed on the merits.

Complaint dismissed on the merits.